Argued July 20; reversed September 6, 1933

# SMITH *v.* ALLEN ET AL.

(24 P. (2d) 1043)

*William B. Layton* and *Edward A. Boyrie,* both of Portland, for appellant.

*McDannell Brown,* of Portland (C. M. Idleman, of Portland, on the brief), for respondent.

KELLY, J. For many years prior to May 15, 1930, the plaintiff advanced various sums of money to the defendant, A. W. Allen, who was engaged in the drug business in Portland, and promissory notes were given by Allen therefor. As interest matured on these advances, promissory notes therefor were executed by Allen to plaintiff. Some payments in cash were made thereon by Allen; but at all times mentioned herein a large part of this money remained unpaid.

Prior to May 15, 1930, various creditors of Allen assigned claims aggregating an amount in excess of $14,000 to defendant, The Adjustment Bureau of the

Portland Association of Credit Men, which, for brevity, will hereafter be referred to as The Bureau. On May 15, 1930, Allen and his wife executed three promissory notes to The Bureau as security for said claims. On the 15th day of January, 1931, at the instance of The Bureau, Allen executed the chattel mortgage in suit securing said three promissory notes and covering the merchandise and fixtures of his drug business and the bills receivable thereof. Allen's business was thereafter conducted under the supervision of The Bureau. On September 29, 1931, the assignment in suit was executed by Allen to The Bureau.

When said chattel mortgage was executed, Allen considered plaintiff a silent partner and at all times since has so considered him.

On December 12, 1931, in the circuit court for Multnomah County, plaintiff recovered judgment upon the obligations first mentioned herein against Allen in the sum of $44,366.86, together with costs in the sum of $31.95. A nulla bona return having been made upon execution, plaintiff seeks to set aside said chattel mortgage and assignment for the benefit of creditors on the ground that the same have hindered, delayed and defrauded plaintiff of his just debts; and on the further ground that The Bureau failed and neglected to demand or receive from Allen, at least five days before the consummation or execution of said assignment or transfer, a written statement under oath containing the names and addresses of all of Allen's creditors or a written statement under oath to the effect that Allen had no such creditors, and failed and neglected to notify or cause to be notified any of Allen's creditors, and particularly plaintiff, of said proposed transfer at least five days before its consummation.

Plaintiff argues that the several transactions and instruments involved were so identified that they should be construed together in determining whether or not the transaction was valid as to creditors. We are unable to concur in this view. The notes to The Bureau were executed in May of 1930. Eight months thereafter the chattel mortgage securing those notes was executed. Another period of eight months elapsed before the assignment was executed. The execution of these instruments were successive steps marking the course taken by The Bureau in liquidating its clients' claims.

As we view the record, the mortgage was taken after satisfactory returns were not obtained by The Bureau from the business during the eight months following the execution of the notes. The disappointing nature of the results ensuing during the next octad caused the execution of the assignment.

■ Treating them as distinct, and not identical, transactions, we are confronted with the question of whether the evidence supports plaintiff's contention that the chattel mortgage was taken by The Bureau to hinder, delay and defraud plaintiff.

"* * * a debtor in failing circumstances may prefer one creditor to another by giving him adequate security for his debt to the exclusion of others. The right to give such preference necessarily implies the right of the creditor to accept it, and if he accepts the preference in good faith, without fraudulent purpose on his part, it will not be void on account of the motive which may have prompted the debtor to make it." Sabin v. Columbia Fuel Co., 25 Or. 15, 27 (34 P. 692, 35 P. 854, 42 Am. St. Rep. 756).

"To avoid a mortgage or other conveyance as fraudulent and void, there must be a real design on the part of the mortgagor, in which the mortgagee participated, to withdraw his property from the claims of his creditors. * * * A debtor has a right to secure a

creditor, and, if he does so by giving a mortgage, it is what the law admits to be rightful, although the effect will be to hinder other creditors, and he so intends; yet, if such mortgage is accepted in good faith, it is not a fraudulent hindrance, because the debtor has not disposed of his property in a way to prevent its application to the satisfaction of his bona fide debts.'' Currie v. Bowman, 25 Or. 364, 381 (35 P. 848), quoted with approval by Mr. Justice Henry J. Bean in Kenney v. Hurlburt, 88 Or. 688, 698 (172 P. 490, 173 P. 158, L. R. A. 1918E, 652, Ann. Cas. 1918E, 737).

Allen regarded plaintiff as his silent partner. The Bureau did nothing to support this view. In taking the chattel mortgage, The Bureau merely secured a preference. It is not suggested that The Bureau's claims were not bona fide claims, nor is it suggested that any benefit could have accrued to Allen by reason of said chattel mortgage. Giving effect to plaintiff's judgment against Allen, which fixes his status as a creditor of Allen, this is an instance of a creditor dealing with a financially embarrassed debtor, knowing that such debtor also had another creditor and thereupon securing a preference over such other creditor. In saying this, we are not unmindful that plaintiff's judgment against Allen was not rendered until almost eleven months after the execution by Allen of the chattel mortgage to The Bureau, and more than two months after the execution of said assignment; but we also give effect to the evidence that, before the chattel mortgage was executed by Allen, counsel for plaintiff advised The Bureau that plaintiff claimed to be a creditor of Allen.

Plaintiff urges, however, that the interest created by the mortgage became merged in the larger interest transferred by the assignment, and that when the assignment was executed The Bureau was apprised of the real nature of plaintiff's claim.

The assignment contains the following provision: "* * * it being understood and agreed that the acceptance of this transfer by The Adjustment Bureau of the Portland Association of Credit Men is without prejudice to or waiver of any rights that the mortgagee or any of the beneficiaries of said mortgage may have or may hereafter acquire under said mortgage, or in and to the mortgaged chattels described in said mortgage".

■ As aptly stated by Mr. Justice BELT:

"Whether a merger exists depends upon the intention of the parties. Where it is for the best interests of the mortgagee not to merge legal and equitable titles, it may refrain from so doing: Hicks v. Beals, 83 Or. 82 (163 P. 83, L. R. A. 1917D, 1067); Katz v. Obenchain, 48 Or. 352 (85 P. 617, 120 Am. St. Rep. 821); Watson v. Dundee, M. & T. I. Co., 12 Or. 474 (8 P. 548)". Phegley & Cavender v. Swender Blue Print Co., 133 Or. 146, 154, 155 (289 P. 500).

■ To declare such a merger in this case would be to materially alter the express terms of the assignment.

At most, the assignment was a transfer of such interest as Allen had in the mortgaged chattels. Allen's interest was subject to the mortgage. The amount realized upon the sale of such chattels was $5,000, which is but little more than one-third of the mortgage lien thereon.

■ The Bulk Sales Law is not applicable to a chattel mortgage, when executed as such and not in reality as an unconditional sale and transfer. *Schwartz v. King Realty & Investment Company*, 94 N. J. Law, 134 (109 Atl. 567) and annotation, 9 A. L. R. 471, et seq.; *Waldrep v. Exchange State Bank*, 81 Okl. 162 (197 P. 509) and annotation, 14 A. L. R. 747, et seq; annotation, 57 A. L. R. 1049.

■ Because there was an oral grant of two weeks grace to Allen by The Bureau when the assignment was made, it is argued that this constituted a reservation of a secret interest by Allen rendering the assignment invalid. We do not so understand it. It merely gave two weeks longer time to Allen to meet The Bureau's claims. This could not in any sense prejudice the plaintiff as one of Allen's creditors.

■ The express exemption of plaintiff from participation in the proceeds of said assignment is not inconsistent with Allen's claim that plaintiff was not a creditor but a partner, and we are therefore unable to give it the effect of evidencing a fraudulent purpose against plaintiff.

■ The sale of the mortgaged chattels was made pursuant to a stipulation of the parties hereto. The question of the regularity of such sale, therefore, cannot be considered in this case. We think that The Bureau could have foreclosed its chattel mortgage without suit either by public or private sale for such is the manner of its foreclosure expressly prescribed therein.

For the reasons above stated, the decree of the circuit court is reversed and this cause is dismissed. It is ordered that neither party recover costs or disbursements either in this court or in the circuit court.

RAND, C. J., CAMPBELL and BAILEY, JJ., concur.