Argued April 18; dismissed April 26; rehearing denied
May 14, 1946

## SCHOOL DISTRICT NO. 1, MULTNOMAH
## COUNTY *v.* GLEASON

(168 P. (2d) 347)

*Stanley Jones,* Deputy District Attorney, of Portland, (T. B. Handley, District Attorney, of Portland, George Neuner, Attorney-General, of Salem, and Grace Bottler, Assistant Attorney-General, of Salem, on brief) for defendant.

*Grant T. Anderson,* of Portland, (with King & Wood, of Portland, on brief) for petitioner and plaintiff.

Before ROSSMAN, Acting Chief Justice, and KELLY, BAILEY, LUSK, BRAND and HAY, Justices.

KELLY, J.

Original proceeding in mandamus to require defendant as Registrar of Elections for Multnomah

County to conduct an election upon the proposal for a special tax levy for the fiscal year 1946-47 by plaintiff School District No. 1 of Multnomah County, which is a district having a population of more than 100,000 according to the United States census.

KELLY, J.

On February 27, 1946, plaintiff's board of directors adopted the following resolution:

"Resolved, That the Board of Directors of School District No. 1, Multnomah County, Oregon, in the exercise of its discretion, hereby finds that it is necessary to levy a larger amount of taxes for the fiscal year commencing July 1, 1946, than the amount limited by the constitution except upon a vote of the people for the reasons that

Establishment of war industries brought into this area thousands of workers with children which increased average daily school attendance from 38,000 in 1941-42 to 45,000 in 1945-46. Federal government helped finance this expansion during the last three years. Under existing congressional legislation, federal assistance will not be available after June 1946. Therefore, funds must be provided from local sources if present standards of physical properties, staff, and educational opportunities are to be maintained for a probable continuing increase in attendance.

It is further

"Resolved, That there be submitted to the electors of School District No. 1, Multnomah County, Oregon, at the next regular school election, being the primary election to be held the 17th day of May, 1946, the following proposal:

Shall School District No. 1, in order to provide a fund for the maintenance and operation of its schools, school plants and school facilities during the fiscal year commencing July 1, 1946, and end-

ing June 30, 1947, make a special tax levy outside the limits imposed by Article XI, Section 11, of the Oregon Constitution, in said fiscal year commencing July 1, 1946, in the amount of $1,750,000.00?

( ) Yes. I vote in favor of the proposed levy.
( ) No. I vote against the proposed levy.''

The foregoing finding and resolutions were certified to defendant accompanied with a demand that defendant as Registrar of Elections submit said proposed tax levy to the electorate at their next ensuing school election in said school district which will be held on May 17, 1946.

On April 3, 1946, defendant notified plaintiff of his refusal to submit said proposed tax levy to the electorate or conduct an election thereon.

Upon petition by plaintiff, an alternative writ of mandamus issued herein requiring defendant to submit said proposed tax levy and conduct an election or show cause why he should not be required to do so.

Defendant filed a general demurrer to said alternative writ of mandamus and a brief thereupon. Plaintiff has also filed a brief herein. Oral arguments by counsel for both parties have been heard.

The question to be decided is whether there is any effective statute authorizing or requiring defendant, as Registrar of Elections, to conduct an election in said School District No. 1 for the purpose of submitting to its electorate the question whether the proposed special tax levy should be made.

■ It is conceded by both parties that there is no inherent reserved power in the people to hold an election and that to be legal and effective an election must be conducted in accordance with and pursuant to a valid statute authorizing it. *State ex rel v. Simon*, 20 Or. 365, 26 P. 170; *State ex rel v. Kozer*, 115 Or. 638,

239 P. 805; *Kneeland v. Multnomah Co.*, 139 Or. 356, 10 P. 2d 342; *State ex rel v. Hoss*, 143 Or. 383, 22 P. 2d 883; *State ex rel v. Hayworth*, 152 Or. 416, 53 P. 2d 1048.

Defendant contends that there is no statute authorizing the submission of the proposed special tax levy to the electorate or the holding of an election thereon.

Plaintiff concedes that, if the statutory authority exists at all to submit to the electorate a proposal for a special tax levy, it exists solely by virtue of Section 110-1109, Vol. 7, O. C. L. A., pp. 1239-40, when applied to the provisions of Chapter 222 of Oregon Laws 1937, pp. 317-320, Sections 111-1526, 111-1527, 111-1528, 111-1529, 111-1530, 111-1531, 111-1525 and 111-1532, Vol. 8, O. C. L. A. pp. 158-161, amended as to Section 111-1529, by Chapter 295, Oregon Laws 1941, p. 507.

Section 110-1109, O. C. L. A. supra, is as follows:

> "School district tax levy: By whom determination and certificate of necessity made: Notice of election: Election procedure. In school districts the like determination and certificate upon the question of increasing the tax levy and fixing the date of the election shall be made by the board of directors and notice of such election given by the school district clerk in the same manner as other elections are called by such districts, which notice shall be given and published for not less than twenty days prior to the date of the election. Such election shall be conducted and held and the result thereof ascertained in the usual manner of holding such elections in such districts respectively, and at the time specified in the notice."

It will be observed that section 110-1109 provides that the date of election shall be fixed by the board of directors, notice thereof shall be given by the school district clerk, and shall be published not less than

twenty days prior to the election which shall be held at the time specified in the notice.

The defendant is the duly appointed, qualified and acting Registrar of Elections of Multnomah County, the same being a county having more than 250,000 inhabitants. By virtue of Chapter 370, Oregon Laws 1945, such officer is required to perform the duties which theretofore were, now are or hereafter may be prescribed by law to be performed by the county clerk, the supervisor of elections or the sheriff of each of the various counties of the state in connection with the registration of voters, the conducting and holding of elections including the giving of notice thereof and the preparation of ballots therefor, the securing of polling places and the furnishing and delivery of election supplies, the canvassing of votes thereat, the custody of all records in connection therewith, the issuing of certificates of election, and each and every act required to be performed by such county clerks, supervisors of elections or sheriffs pertaining to or in connection with the holding of general, primary or special elections.

No authority is conferred upon the Registrar of Elections to perform the duties which by the terms of said section 110-1109, O. C. L. A., supra, are placed upon the board of directors or the clerk of a school district of the first class.

Section 1 of Chapter 222, Oregon Laws 1937, is as follows:

"Section 1. On and after January 1, 1938, school elections in districts of this state having a population of more than 100,000, according to the United States census, shall be held as in this act provided."

Section 3 of Chapter 222, aforesaid, provides that at each primary election, directors shall be elected for

a term of four years to succeed the directors whose terms of office expire on June 30 of that year.

By its terms, said Chapter 222 provides only for the election of directors and makes no provision for an election upon the question of levying a special tax.

Section 10, of said Chapter 222, is as follows:

"Section 10. That chapter XVII, title XXXV, Oregon Code 1935 Supplement, and all laws or parts of laws in conflict herewith, be and the same hereby are repealed."

Chapter XVII, title XXXV so repealed, consists of one section, which is as follows:

"§ 35-1701. School elections—Time and manner of holding—Districts of more than 100,000 population.—In all school districts of this state having a population of more than one hundred thousand [100,000], according to United States census, the annual election shall be held on the first Tuesday in June of each year, and such annual election, and any special election that may be legally held, shall be held from 8 a. m. to 8 p. m., and shall be by ballot, and such ballot shall be uniform and shall be provided by the board of directors."

While, as stated, no authority is conferred upon the Registrar of Elections to perform the duties of the board of directors or the clerk of a school district, as prescribed by section 110-1109, O. C. L. A., supra, by section 5 of Chapter 222, Oregon Laws 1937, it is provided that the county clerk of the county in which such school district is located shall provide uniform printed ballots for the election of the members of the board of directors, and provision is also made in said section 5 for filing with the county clerk certificates of nomination for the office of director. Under the provisions of Chapter 370, Oregon Laws 1945, supra, the duties

thus required of the county clerk in said section 5 of Chapter 222, Oregon Laws 1937, were transferred to and imposed upon the Registrar of Elections; but, as stated, no duties have been imposed upon or required of the Registrar of Elections with reference to an election to determine whether a special tax levy shall be made by a school district.

To determine whether or not defendant's demurrer to the alternative writ of mandamus should be sustained, we need only to ascertain whether or not the duty rests upon defendant as Registrar of Elections to conduct an election in plaintiff school district whereat the question of levying a special tax may be determined.

We find no provision of law placing such duty upon defendant as Registrar of Elections; and therefore we hold that defendant's demurrer to the alternative writ of mandamus should be sustained.

Were we to supplement this opinion by stating that there is no authority for holding an election in plaintiff school district to determine the question whether a special tax should be levied, such statement might well be deemed to be mere dictum; but the grave emergency confronting plaintiff district, as disclosed in the resolutions passed by its board of directors, prompts us to suggest that the present apparent lack of such authority should have the attention of the legislature.

Defendant's demurrer to the alternative writ of mandamus is sustained and this cause is dismissed.

BRAND and HAY, JJ., dissent in an opinion by BRAND, J.

BRAND, J. (Dissenting).

I dissent. The board of directors of School District No. 1, Multnomah County, has by resolution declared the necessity of making a special tax levy outside the limits imposed by Article XI, § 11, of the Oregon Constitution, in the amount of $1,750,000, if present educational standards are to be maintained. The board has also by resolution called a special election to be held in connection with the next regular school election, being the primary election to be held on the 17th day of May, 1946, at which time a vote is to be taken upon the proposed special tax levy. The board has directed the officers of the school district to do all acts or things necessary or proper to carry out the foregoing resolution.

The questions to be decided are, first, whether there is any law under which the Portland School District can hold an election to authorize a special tax levy in excess of the six per cent limitation; and, second, whether it can hold the election as proposed in its resolution, and whether the registrar of elections should be directed by mandamus to perform duties in connection therewith.

In 1915 a statute was enacted applicable to the Portland School District, abolishing school meetings and authorizing the board of directors to fix the tax to be levied for the support of the district. The act provided machinery under which school elections should be held. Laws of 1915, Chapter 163, p. 198. Section 1 of that act was amended by the 1927 Laws, Chapter 42, p. 52, O. C. § 35-1701; and again by the Laws of 1933, Chapter 113, p. 112, O. C. Supplement 1935, § 35-1701. The section as thus amended provided for an annual election in the Portland School District to be held on the first

Tuesday of June, and provided further that any special election that may be legally held shall be held from 8:00 a. m. to 8:00 p. m., and shall be by ballot, and such ballot shall be uniform and shall be provided by the board of directors. Section 1 of the 1915 statute, as thus amended, was expressly repealed in 1937. Laws of 1937, Chapter 222, § 10. I think it is agreed that the repeal of the first section, as amended, of Chapter 163, Laws of 1915, rendered it impossible to invoke the remaining portions of the chapter, as the authority for the manner of conducting school elections in the district.

The question naturally arises whether Chapter 222 of the Laws of 1937, which emasculated the 1915 law by repealing Section 1 thereof, has provided any substitute provisions for the holding of elections in the Portland District on special tax levies. Without referring in detail to the provisions of the 1937 Act, it will be observed that Chapter 222 of the Laws of 1937 provides: (1) That "school elections" in the district "shall be held as in this act provided," § 1; (2) it provides in detail for the election and tenure of school directors; and (3) it provides that

"At all elections held under this act, all persons residing within the limits of such school district and having the qualifications prescribed by law to vote for county officers shall be legal voters, qualified to vote at elections held hereunder, and the canvass and return of votes shall be conducted in the same manner, at the same time and under the same penalties as are now or hereafter may be prescribed by law relative to the election of county officers in the county in which such school district is located." Laws of 1937, Ch. 222, § 4.

It also imposes duties upon the county clerk of the county in connection with the elections and requires the school district to pay to the county treasurer a propor-

tionate cost of the general expenses of the election. Chapter 222 adequately provides machinery for a school election at which directors are to be elected, but, as stated by the majority, there is no mention of elections on special tax levies; and I, therefore, concede that Chapter 222 of the Laws of 1937 cannot be held to have operated *in and of itself* as the statutory authority for the holding of special tax levy elections. The majority concludes that there is no statutory authority under which the election as called by the board of directors can be held, and they appear to hold that there is no statutory authority under which the Portland School District can hold any election to authorize a special tax levy in excess of the six per cent limitation. With these conclusions, I respectfully disagree.

Article XI, § 11, of the Constitution provides that the six per cent limitation cannot be exceeded "unless specifically authorized by a majority of the legal voters" in the various tax levying districts. While this constitutional provision is not self-executing, it does contemplate that the voters of every such district shall be given the power to exceed the six per cent limitation by vote and it constitutes a mandate to the Legislature to enact appropriate legislation.

The action of the Legislature in repealing Section 1 (as amended) of Chapter 163, Laws of 1915, while leaving other portions thereof unrepealed, (see O. C. L. A. § 111-1521), and its failure to make any specific provision in the 1937 Act directly authorizing elections on special tax levies in the district, coupled with its failure at or after 1937 to enact any other statute covering such elections, leaves the statutory law in a state of confusion worse confounded.

From the standpoint of the interests of the district, the financial result of the majority rule is tragic, but

I concede that this is a consideration which should not influence the decision of the court. We cannot judicially supply fatal omissions in legislative codes, if such there be. But the issues of this case do present a legal, as distinguished from a financial, crisis which may properly, though within limits, influence judicial decision.

The constitutional provision cited supra contemplates that tax levying districts shall have the right by popular vote of qualified electors to exceed the six per cent limitation on tax levies. If we can find no statute which implements the constitutional provision as to the Portland School District, we deprive that district of a right which other municipal corporations and districts enjoy. We deprive it of a right which stems from the supreme law.

Pursuant to the mandate of the people, the Legislature implemented the constitutional provision by enacting a general statute (Chapter 150, Laws of Oregon 1917, p. 192; O. C. L. A. §§ 110-1101 to 110-1112, incl.), which provides:

> "Elections for voting upon the question of increasing the tax levy in the State at large, counties, municipalities and districts not possessing a separate legislative department, shall be called and held in the manner respectively provided herein." General Laws of Oregon, 1917, Ch. 150, § 1, p. 192.

Section 9 of that act (O. C. L. A. § 110-1109) is as follows:

> "In school districts the like determination and certificate upon the question of increasing the tax levy and fixing the date of the election shall be made by the board of directors and notice of such election given by the school district clerk in the same manner as other elections are called by such districts, which notice shall be given and published for not less than

> twenty days prior to the date of the election. Such election shall be conducted and held and the result thereof ascertained in the usual manner of holding such elections in such districts respectively, and at the time specified in the notice.'' General Laws of Oregon 1917, Ch. 150, § 9, p. 194.

This enactment has never been repealed and should be given some meaning. By it the Legislature clearly intended to extend the rights arising under the constitution to all the districts mentioned in Section 1, supra. If we now hold that the Portland School District is deprived of the right vested in the voters of other districts we emasculate an unrepealed statute passed pursuant to constitutional mandate with the resultant discrimination against a single district when there is not a syllable in any statute which manifests even by implication an intention to deprive the qualified electors of the district of the rights accorded to voters of other districts. This, I agree, the court must do unless it can find statutory authority for holding the election. The conclusion reached by the majority is strongly supported. The issue is doubtful and confused, but I believe the considerations to which I have adverted require that this court should go to the very limit of permissible judicial construction in order to avoid a result which nullifies both the constitutional objective and the statute which implements that objective. If Section 9 of the 1917 Act is unrepealed, but cannot be invoked by the district in this case, it is pertinent to inquire under what circumstances could it be given any effect?

There being no other statute authorizing a special tax election in the Portland District, the vitalizing authority must come from Chapter 150 of the Laws of 1917, or not come at all. Turning to that chapter,

quoted supra, we find that according to Section 1 an election on the question of increasing the tax levy "shall be called and held in the manner respectively provided herein." In Section 9 thereof, we find that the board of directors of the school district is to issue a certificate upon the question of increasing the tax levy. This they have done. They are to fix the date of the special election. This they have done by specifying the date of the general primary election which is also the date fixed by the Act of 1937 for the election of directors. Laws of 1937, Ch. 222, § 2, p. 318. Section 9 of the 1917 Act directs that notice of such election be given by the school district clerk "in the same manner as other elections are called by such districts." This provision is inaptly phrased, but it appears to mean that notice shall be given as notice is given for "other elections." It could not mean that notice is to be given by the school district clerk as elections are "called" by the directors. This requirement, we may assume, has been or would be performed by the school district clerk, for the resolution of the board directs in general terms that the officers of the district shall do all things necessary or proper.

But the question arises as to whether there is any law defining the duties of the school district clerk in giving notice.

On April 9, 1937, in response to an inquiry from the Superintendent of Public Instruction, the Attorney General ruled that in an election of directors to be held in June 1937,—

"Since there is no special provision in said act or in any other statute, relating to notice of the school election in school districts of more than 100,-000 population, it is my opinion that such notice should be published as provided in section 35-1007, Oregon Code 1935 Supplement, which is a general

statute relating to all school districts within the state of Oregon." Opinions of the Attorney-General, 1936-1938, p. 226.

Presumably his advice was followed, and the incident constitutes an administrative construction relevant here.

The statute to which the Attorney General referred provides:

"The clerk of any school district in which a newspaper is published shall publish a notice of each annual and each special school meeting or election in one or more of the newspapers published in said district and having a general circulation in the district, such publication to be once a week for two successive weeks immediately preceding such meeting * * *." O. C. L. A. § 111-908.

Section 9 of the 1917 Laws provides that notice shall be given and published for not less than twenty days. Both provisions can be complied with. Thus we find statutory authority for each of the two essential acts which are jurisdictional; i. e., without the performance of which a special election would be void. There is specific authority for calling the election and for giving the necessary notice. Other provisions as to the manner of conducting elections may be required, but when enacted they are mostly of a ministerial character. They fall within the class of directory provisions as to which substantial compliance satisfies the requirements of law.

Such additional legislative provisions concerning the conduct of elections can be spelled out by the process of liberal construction required by the necessities of this case. Section 9 of the Act of 1917 provides that the election "shall be conducted and held and the result thereof ascertained in the usual manner of holding

such elections in such districts respectively.'' This act was passed in 1917, but it is a continuing provision authorizing future elections on special tax levies. The ''usual manner'' to which reference is made in the statute may change from time to time as statutes are changed.

Chapter 222 of the Laws of 1937, while it does not mention elections for special tax levies and deals specifically only with elections of directors, does nevertheless provide that ''school elections * * * shall be held as in this act provided.'' And an election on a special tax levy is a ''school election.'' *Klutts v. Jones* (1915) 20 N. Mex. 230, 148 P. 494; *Vogel v. Steelman* (1916) 53 Okla. 557, 157 P. 280; *McKinnon v. Union High School District No. 1* (1925) 116 Or. 543, 241 P. 386. So far as I know, the 1937 Act is the only one which now provides any machinery for any ''school election'' in the Portland District. As of this date, it is the only statute which defines the ''usual manner of holding such elections in such districts respectively.'' (Sec. 9, Ch. 150, Act of 1917) Being constrained to seek a construction in harmony with the expressed constitutional provision and one which will give some meaning to the 1917 Act, I would construe the last quoted clause of the 1917 Act as adopting prospectively the ''usual manner'' of conducting a school election in the Portland District as the manner provided for conducting a *special tax election.* The authority to take the essential steps for such election is to be found in, and only in, the 1917 Act; but by force of that act we would look to the usual manner of conducting a ''school election,'' the only manner now provided by law, to-wit, by the 1937 Act for election of directors. Looking to that statute as a guide, the election would be held pursuant to the provisions of the 1917 Act which has

provided the rule for guidance, "the usual manner" in such district.

In the process of construction which the conditions seem to require, we may find some comfort in the rules which favor constructions which conform to the probable legislative intent and in those other rules which authorize reference to other statutes in *pari materia,* or which have a common purpose.

> "When a statute provides for an election submitting a matter or matters of county-wide policy to the voters of the entire county but prescribes only that the election thereunder shall be held under the election laws of the state and is silent as to the notice necessary to be given it becomes the duty of the court to resort to and apply such of the election laws as bear the closest analogy to the election provided for under the statute presently being considered, 59 C. J. p. 1041 et seq.; or to state the same principle in other words, a statute must be construed, so far as concerns the particular question at issue, as nearly as may be in accordance with the general system of which it forms a part, and for this purpose statutes upon cognate subjects may be resorted to although not strictly in pari materia. Lewis' Sutherland Statutory Construction (2d Ed.) p. 848; 25 R. C. L. pp. 1052, 1053, note 15. Applying and following the foregoing settled rules, we have concluded that sections 310 and 311, Code 1930, are here the closest of all among our statutes in point of analogy." *Simpson County v. Burkett,* 178 Miss. 44, 172 So. 329.

And see 59 C. J., Statutes §§ 619, 620; 50 Am. Jur., Statutes §§ 348, 349.

It may be objected that there are property qualifications for voters at elections on special tax levies and that the 1937 Act in dealing with election of directors establishes a different rule involving no property

qualifications for voters electing school directors. See O. C. L. A. § 111-910. This is true, but the 1917 Act does not deal with election of directors, which is only one of three types of school election. Nor does it adopt as a guide any provision of the 1937 Act concerning directors' elections or concerning the qualification of voters thereat. It adopts only the "usual manner" of holding a school election. The manner of holding an election may surely be distinguished from the qualifications of voters at the election.

The fact that the qualifications for voting in a special tax levy election differ from those for voting for directors or on other issues presented at the primary election may present difficulties, but not, I think, difficulties strange to election officials in the past. There would undoubtedly be required a separate ballot box for the ballots on the special levy, and ballots appropriate for use on the special tax election would be given only to those voters qualified to vote on that issue. It would be no more difficult to ascertain who is so qualified at the election on May 17 than it would be if the tax election were held separately on a different day. The task would be simplified by the fact that the statute provides:

> "In any county containing a school district which now has or hereafter may have a population of more than twenty thousand children of school age, the county clerk shall, in addition to such other information as may be required by law, require voters when registering to state under oath whether they are taxpayers within the meaning of section 111-910." O. C. L. A. § 81-119.

See also O. C. L. A. § 111-910.

One other point requires mention. The provisions of the 1917 Act requiring the school district clerk to

give notice of the election are not opposed to the view that the conduct of the tax election should be in the usual manner specified in the 1937 Act. The 1937 Act does not direct the county clerk to give notice of school elections. His duties under that statute begin with the preparation of ballots. Laws of 1937, Ch. 222, § 5. The county clerk does have duties under the 1937 Act in conducting school elections, and the Act of 1945, Ch. 370, transfers the duties of the county clerk and other named officials to the Registrar of Elections, defendant herein. But the only duties so imposed upon the registrar are those formerly imposed on the clerk and others as specified in the act. Since the 1937 Act does not impose any duty on the county clerk to give notice of election, no such duty is transferred to the registrar and the required giving of notice by the *school district clerk* dovetails with the subsequent duties of the registrar.

With full appreciation of the considerations which have led the majority (perhaps reluctantly) to its decision, I still feel constrained to express the view that the demurrer to the writ should be overruled and a peremptory writ issued. The necessity for immediate decision of the case has rendered more exhaustive treatment of the issues pro or con impossible.

Mr. Justice HAY joins in this dissent.